[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 610 
OPINION
Clifford and Katherine, natural parents of Christopher and Tammy, ages three and one-half years and 18 months, respectively, appeal from the order of the juvenile court declaring them to be dependent children of the court. They contend: (1) the Fourth Amendment exclusionary rule should be applied to Welfare and Institutions Code, section 300, dependency proceedings, and (2) the court, in finding the minors to be dependents of the court by a preponderance of the evidence rather than by clear and convincing evidence, applied an erroneous standard of proof.
The following pertinent facts were adduced at the jurisdictional hearing: On March 16, 1977, Corporal Anna Schock, a deputy sheriff of Sacramento County, went to the B. home to investigate a report of child abuse. She had no arrest or search warrant. Officer Schock requested permission to enter the house to look at the children and Mrs. B. said "sure." Both children were found with runny noses (one was wearing a dirty diaper), but were otherwise without bruises or other evidence of abuse. Schock did, however, find the living room in which the children were sitting to be dirty and very cluttered with piles of clothing *Page 611 
and other miscellaneous items. She also noticed a strong odor of urine, and asked if Mrs. B. would mind if she looked through the house. Schock testified Mrs. B. said she did not mind.[1]
Schock then proceeded to investigate other rooms in the house and observed that they were also cluttered and dirty. In the kitchen, a baby's highchair was "very, very dirty," with dried food on the tray, seat of the chair and around the floor. The kitchen table was dirty and there were dirty dishes in the sink. When asked, Mrs. B. stated she could not remember the last time she had washed the dishes.
In the children's bedroom, Tammy's bed (a mattress on the floor) appeared to be urine stained, and there were dirty diapers and clothes at the end of her bed — one diaper had dried feces on it. The parents bedroom contained more clutter, including a dirty baby's bottle with what appeared to have dried feces on it, an unmade bed with what again appeared to be dried feces on a pillowcase. Wet and dirty clothing lay on the floor of the bathroom.
When questioned by Schock as to whether she would accept homemaking assistance from the county, Mrs. B. responded that she felt she could care for her children on her own. Mrs. B. was advised to dress the children, as they were going to be removed. Schock attempted to call from the residence for backup personnel and it became necessary to handcuff Mrs. B., as a means of restraint only, in order to use the telephone. Mrs. B. freed herself from the handcuffs, making it necessary for Schock to go to her car to summon assistance. She remained there until a backup unit arrived, as she had in the meantime been locked out of the house. Officers Carlson and Datsun arrived in response to her call and Mr. B. appeared followed by an Officer Hutchings with photographic equipment.
The B's initially refused to readmit the officers but submitted to threats of forcible entry. Over Mr. B's objections, photographs were then taken of the inside of the home. The children were taken into custody and placed in the Sacramento Children's Receiving Home.
Petitions were filed on March 18, 1977, alleging the children came within the provisions of Welfare and Institutions Code section 300, *Page 612 
subdivision (b).[2] On April 1, 1977, the children were released to their parents. Pending court hearing of the petitions on May 9, a social worker periodically visited the B. home to ensure it was adequately maintained.
When asked at the hearing if there was any reason why on March 16, 1977, the house was so dirty and unkempt, Mr. B. responded there was none. He admitted the pictures showing the condition of the house disturbed him. Although the B's had been living at their present home since November 1976, Mrs. B. explained the condition by saying the family was still trying to find items lost in their move from Colorado. She also testified she had been to the laundromat and had not yet put the clothes away.
When asked by the judge how the house got into such a state, Mrs. B. admitted she ignored necessary jobs. She testified she hardly knew what time it was much of the time, that all her days ran together without any variance, differentiated only by the sun going down and coming up.
The court, without stating specific reasons, overruled objections and admitted into evidence the photographs of the house. On the basis of the testimony presented and the photographs, the court sustained both petitions. The children were adjudged dependents of the court but placed in the custody of their parents.
(1) Defendants contend the Fourth Amendment and the exclusionary rule should be applied to Welfare and Institutions Code, section 300 dependency proceedings. They argue the testimony regarding the initial search of their home and the photographs taken during the subsequent reentry were the result of nonconsensual and warrantless searches and therefore should be suppressed. We reject this contention.
The Fourth Amendment has been held applicable in civil cases. The United States Supreme Court has held a housing inspector is required to obtain a warrant before conducting a nonconsensual search for violations of the housing code. (Camara v.Municipal Court (1967) 387 U.S. 523 [18 L.Ed.2d 930, 87 S.Ct. 1727].) The court there said: "[E]xcept in certain *Page 613 
carefully defined classes of cases a search of private property without proper consent is `unreasonably' [sic] unless it has been authorized by a valid search warrant." (Id., at pp. 528-529 [18 L.Ed.2d at p. 935].)
The same day, the court held a businessman is protected by the Fourth Amendment in respect to his commercial property, and a fire inspector must have a warrant before inspecting a locked warehouse. (See v. City of Seattle (1967) 387 U.S. 541 [18 L.Ed.2d 943, 87 S.Ct. 1737].)
In May 1978, the United States Supreme Court, citing Camara
and See, held the Fourth Amendment prohibition against unreasonable searches and seizures applied to a warrantless inspection of a business premise under the Occupational Safety and Health Act (OSHA). The court said: "If the government intrudes on a person's property, the privacy interest suffers whether the government's motivation is to investigate violations of criminal laws or breaches of other statutory or regulatory standards." (Marshall v. Barlow's, Inc. (1978) 436 U.S. 307, 312 [56 L.Ed.2d 305, 311, 98 S.Ct. 1816].)
However, the court also said its decision in the Marshall
case need not, of necessity, make warrantless searches unconstitutional under all other regulatory schemes. "The reasonableness of a warrantless search, however, will depend upon the specific enforcement needs and privacy guarantees of each statute." (Id., at p. 321 [56 L.Ed.2d at p. 317].)
The California courts have found the Fourth Amendment exclusionary rule applicable in some civil areas, and inapplicable in others.[3]
In People v. Moore (1968) 69 Cal.2d 674, 681 [72 Cal.Rptr. 800,446 P.2d 800], a narcotic addict commitment proceeding, the court said: "Whether any particular rule of criminal practice should be applied . . . depends upon consideration of the relationship of the policy underlying *Page 614 
the rule to the proceeding." The court in Moore held the exclusionary rule applicable due to the close identity of the commitment proceeding to the aims and the objectives of criminal law, and because of the deterrent effect of the rule's application.
In Emslie v. State Bar (1974) 11 Cal.3d 210, 230 [113 Cal.Rptr. 175, 520 P.2d 991], the Supreme Court noted the application of the exclusionary rule in a civil case must be worked out on a case by case basis. The court would sanction the use of the exclusionary rule in a civil proceeding whenever it finds a close identity between the particular proceeding and the aims and objectives of criminal law enforcement and if a deterrent effect would result from applying the rule. (Id., at pp. 226-227.)
The court in Emslie held the rule did not apply to a State Bar disciplinary proceeding since there would be practically no deterrent effect on law enforcement officers through such practice. (Id., at p. 229.) In addition, the court found a balancing test must be applied, with consideration given to the social consequences of applying the exclusionary rule, and to the effect thereof on the integrity of the judicial process. (Ibid.)
In Governing Board v. Metcalf (1974) 36 Cal.App.3d 546
[111 Cal.Rptr. 724], the exclusionary rule was held not applicable in a statutory proceeding concerning the dismissal of a teacher for "moral unfitness." The court concluded the special protection afforded children by law justified the use of illegally obtained evidence. (Id., at pp. 550-551.)
In a case similar to the one before us, the court refused to apply the exclusionary rule in a Welfare and Institutions Code, section 600 dependency proceeding[4] in which the juvenile court found the mother maintained an unfit dwelling and thus neglected her child. (In re Robert P. (1976) 61 Cal.App.3d 310, 321 [132 Cal.Rptr. 5].) Testimony and photographs obtained by a warrantless search were admitted over objections to show the condition of the apartment. On appeal, the mother argued the evidence should have been suppressed on the grounds it was the fruit of an unlawful search and seizure.
In sustaining the findings, the court said (at p. 321): "The application of the exclusionary rule, primarily in criminal cases, may be necessary to insure that the law enforcement officers observe the proscriptions of the *Page 615 
Fourth Amendment. However, we are mindful that just dispositions are frequently thwarted thereby and we see no necessity to extend the rule to the relatively few violations in child custody actions which are not criminal in nature. The possibility that such an extension might result in the suffering or deprivation of innocent children is too high a price to pay for any slight additional deterrent effect."
In this case, we feel the potential harm to the children in allowing them to remain in an unhealthy environment outweighs any deterrent effect which would result from suppressing evidence gathered by Schock. Recognizing the special protection afforded children by the law, we will not ignore the reliable evidence here presented and risk the welfare of the children on the basis the evidence was the result of an unlawful and warrantless search.
We agree with the rationale of In re Robert P., supra,61 Cal.App.3d 310, and therefore hold the exclusionary rule inapplicable in civil dependency proceedings under Welfare and Institutions Code section 300 For this reason, defendant's contention of inadmissibility of Schock's testimony, and the photographs, must fail.
(2) Had we found the exclusionary rule applicable in such proceedings, the result in this case would not have changed. There is an implied finding of consent to Schock's initial search of the home. Although there is conflicting evidence in the record on this point, the lower court's admission of all the offered evidence, and it's subsequent reliance thereon in sustaining the petitions, imply a finding of consent to search. All of Schock's testimony regarding her personal observations is admissible.
(3) In People v. Martinez (1968) 259 Cal.App.2d Supp. 943, 945 [65 Cal.Rptr. 920], the court said consent to search may be limited in scope and, once given, may be subsequently withdrawn. The court noted a similarity here with the right to counsel issue in Miranda cases. Since the right to counsel may be waived, and the waiver withdrawn subsequently, the consent to search may be given and subsequently withdrawn. (Id., at pp. 945-946.)
In the present case, the initial consent to search was withdrawn after Schock left the home and attempted to reenter with other officers. They had been locked out of the home, and were only admitted after threatening to break down the door.(4) A person's actions may manifest a lack of consent. (People v. Shelton (1964) 60 Cal.2d 740, *Page 616 
745-746 [36 Cal.Rptr. 433, 388 P.2d 665]; Castaneda v.Superior Court (1963) 59 Cal.App.2d 439, 442-443 [30 Cal.Rptr. 1, 380 P.2d 641]; People v. Escollias
(1968) 264 Cal.App.2d 16, 18 [70 Cal.Rptr. 65].) Since the consent had been withdrawn, and the officer's subsequent searching and photographing of the home did not comply with the Fourth Amendment, the photographs obtained through the officer's unlawful conduct would have been inadmissible in a criminal proceeding.
(5) However, we believe there is sufficient evidence remaining to support a finding, even without the use of the photographs. They were merely a duplication of a small portion of the officer's testimony, which also included conversations with the mother, the urine smell upon entering the home, and the statements regarding the officer's observations of the minor subjects.
Schock testified in detail to the condition of the B. home's interior; this was confirmed in large measure by the B's themselves. The photographs are not shocking. Compared to what was portrayed in oral testimony, they were mild; in reality they were only corroborative and had a relatively minor evidentiary impact. Thus, even assuming error, it was harmless beyond a reasonable doubt. (Chapman v. California (1967) 386 U.S. 18
[17 L.Ed.2d 705, 87 S.Ct. 824, 24 A.L.R.3d 1065].)
Defendants contend an improper standard of proof was applied in the hearing. It is not apparent from the record exactly what standard of proof was utilized by the judge in his determination.(6) Defendants contend a preponderance of the evidence test was used, and that the proper standard was by clear and convincing proof. Plaintiff agrees the proper standard is by clear and convincing proof, but argues the judge below must be deemed to have applied this standard.
In Alsager v. District Court of Polk Cty., Iowa (S.D.Iowa 1975) 406 F. Supp. 10, 25, the court held unconstitutional a parental termination statute which required a mere preponderance of the evidence, stating the fundamental right of family integrity requires at least clear and convincing proof. The Iowa statute in question allowed permanent severance of the parent-child relationship on grounds similar to our Welfare and Institutions Code, section 300, which does not allow permanent severance. Section 366 of the Welfare and Institutions Code requires every dependency order to be reviewed periodically, at intervals not to exceed one year from the date of the last order. *Page 617 
In the case of In re B.G. (1974) 11 Cal.3d 679, 698-699 [114 Cal.Rptr. 444, 523 P.2d 244], the Supreme Court held a clear showing is required to remove a child from a parent, in favor of a nonparent. The court construed Civil Code section 4600 to require such a showing. Section 4600 is applicable to all custody hearings. (Id., at p. 696.)
However, a dependency hearing may not always end in removing the child from the parent's custody, as shown by the case at hand. The court may simply retain jurisdiction to supervise the proper maintenance of the child's environment.
We are of the opinion the clear and convincing proof is required only when the final result is to sever the parent-child relationship and award custody to a nonparent. We do not believe the clear and convincing proof is required when the court is simply making the determination of dependency under section 300
Welfare and Institutions Code section 355 states: "At the [dependency] hearing, the court shall first consider only the question whether the minor is a person described by Section300, and for this purpose, any matter or information relevant and material to the circumstances or acts which are alleged to bring him within the jurisdiction of the juvenile court is admissible and may be received in evidence; however, proof by a preponderance of evidence, legally admissible in the trial of civil cases must be adduced to support a finding that the minor is a person described by Section 300 . . ."
Section 356 of the Welfare and Institutions Code states: "After hearing such evidence, the court shall make a finding, noted in the minutes of the court, whether or not the minor is a person described by Section 300 . . . If the court finds that the minor is such a person, it shall make and enter its findings and order accordingly and shall then proceed to hear evidence on thequestion of the proper disposition to be made of the minor. . . ." (Italics added.)
In re Robert P., supra, 61 Cal.App.3d at page 319, construedAlsager and In re B.G. to require the higher standard of proof in a dependency hearing. The facts of In re Robert P. are substantially the same as here, but implicit in that case is the fact that custody of the minor was removed from the parent to a foster home. (Id., at pp. 313, 315.) With such an implication, Civil Code section 4600 would require the higher standard. *Page 618 
We do not believe we are mandated by the constitutional rights of either parent or child to expand the existing statutory standard of proof, where the only action of the court is to declare the minor to be a dependent child, and to retain custody of the child in the parents.
We therefore hold the proper standard of proof in Welfare and Institutions Code section 300 cases, where the child is not removed from parental custody, to be a preponderance of the evidence, as per section 355 of that code. The record contains substantial evidence to support the lower court's dependency order using that standard of proof.
The judgment (order) is affirmed.
Puglia, P.J., and Paras, J., concurred.
[1] Mrs. B. admitted at trial that she gave Schock permission to come into the house but stated Schock did not ask permission to go into "other rooms."
[2] Section 300, so far as pertinent here, provides: "Any person under the age of 18 years who comes within any of the following descriptions is within the jurisdiction of the juvenile court which may adjudge such person to be a dependent child of the court:
". . . . . . . . . . . . . . . . . . . . .
"(b) Who . . . is not provided with a home or a suitable place of abode."
[3] Cases applying the exclusionary rule: Parrish v. CivilService Commission (1967) 66 Cal.2d 260 [57 Cal.Rptr. 623,425 P.2d 223], a welfare eligibility search; People v. One 1960Cadillac Coupe (1964) 62 Cal.2d 92 [41 Cal.Rptr. 290,396 P.2d 706], a property forfeiture proceeding; People v. Moore
(1968) 69 Cal.2d 674 [72 Cal.Rptr. 800, 446 P.2d 800], a narcotic addict commitment proceeding. Cases againstapplication: Emslie v. State Bar (1974) 11 Cal.3d 210
[113 Cal.Rptr. 175, 520 P.2d 991], State Bar disciplinary proceeding;In re Martinez (1970) 1 Cal.3d 641 [83 Cal.Rptr. 382,463 P.2d 734], parole revocation; Governing Board v. Metcalf (1974)36 Cal.App.3d 546 [111 Cal.Rptr. 724], dismissal of teacher on morals charge; In re Robert P. (1976) 61 Cal.App.3d 310
[132 Cal.Rptr. 5], Welfare and Institutions Code, section 600 dependency hearing.
[4] Welfare and Institutions Code, section 600 was the predecessor of section 300 *Page 619