74 Cal.Rptr.2d 47 (1998)
63 Cal.App.4th 387
GUARDIANSHIP OF JENNA G., a Minor.
JOAN M., Petitioner and Appellant,
v.
ANTHONY G., Objector and Respondent.
No. F028459.
Court of Appeal, Fifth District.
April 16, 1998.
*48 Hal B. Channell, Sonora, for Petitioner and Appellant.
Mark Borden, Sonora, for Objector and Respondent.

OPINION
STONE (WM.A.), Acting Presiding Justice.
This appeal is the latest in a custody dispute between a father and maternal grandmother. The sole issue is whether the trial court used the correct standard of proof in denying grandmother's petition for guardianship of Jenna G.
The trial court and father rely upon Guardianship of Stephen G. (1995) 40 Cal. App.4th 1418, 47 Cal.Rptr.2d 409 (1st Dist., Div.2), which, in order for a court to grant a petition for guardianship over a natural parent's objection, requires the court to find clear and convincing evidence that (1) an award of custody to the parent would be detrimental to the child, and (2) an award to the nonparent would be in the child's best interest. (Id. at p. 1432, 47 Cal.Rptr.2d 409.) Grandmother relies upon Guardianship of Diana B. (1994) 30 Cal.App.4th 1766, 36 Cal. Rptr.2d 447, which holds such a findings must be supported only by a preponderance of the evidence. (Id. at p. 1777, 36 Cal. Rptr.2d 447.) She appeals the denial of her guardianship petition and claims the case must be reversed for the court to reconsider the evidence using the correct standard. We hold the trial court correctly applied the clear and convincing standard of proof.

BACKGROUND
In February 1995, three-year-old Jenna G. survived an automobile crash in which her mother died. She was released from the hospital to her maternal grandmother, Joan M., and was taken to South Dakota to live with an aunt. Anthony G. is Jenna's biological father. Although he and Jenna's mother never married, his paternity was established in a support action which Anthony did not oppose.
In September 1995, Jenna was returned to California and her grandmother was tried and convicted of felony child stealing. (Pen. Code, § 278.) Jenna was placed in Anthony's custody, but her grandmother did not give up her fight to remove Jenna from Anthony's custody. She filed a petition for guardianship of Jenna in October 1996.[1]
Following an evidentiary hearing, the parties stipulated the issue to be decided by the trial court was whether it would be detrimental to Jenna to remain in her father's custody. Anthony agreed that if the trial court found he was an unfit parent, it was in Jenna's best interest to be placed with her grandmother.
The parties disagreed regarding the standard of proof required to prove the claim of detriment and were asked to brief the issue. After reviewing the conflicting authorities, the trial court concluded the burden of proof was clear and convincing evidence and found Joan M. failed to present sufficient evidence that removal of Jenna from her father "was essential to prevent harm to her."

THE EVIDENCE
Although neither party provides a summary of the facts upon which the trial court relied, we note the court provided a detailed explanation of the factual basis for its decision. We summarize the more significant evidence here:
According to Dr. Arlene Giordano, a clinical psychiatrist employed by Joan M. to evaluate Anthony and Jenna, Anthony tested in the low average range of intelligence with a score of 89. In Dr. Giordano's opinion, Anthony *49 exhibits traits of "anxiety, insecurity, a sense of inadequacy, and implusivity, inability to cope with the environment, lack of ambition, dependence on strong female figures, hypervigilance to perceived external dangers and threats, all masked by forced geniality and expressed egocentrism and grandiousity." She was concerned Anthony did not recognize and would be unable to control Jenna or tutor and assist Jenna in her cognitive, social and emotional development.
According to Cynthia Hall, a social worker in the acute psychiatric unit at Columbine General Hospital, and Jenna's therapist for the previous year, Jenna was emotionally troubled as a result of her mother's death and the continuing conflict between her father and grandmother. When Hall first began seeing Jenna, she seemed "fearful of being a child" and unable to focus her care and affection in an age appropriate manner. She later developed separation anxiety and feared her father would leave her. After several months, Jenna began testing her boundaries, becoming unruly, defiant and angry. Her behavior improved when she enrolled in a preschool program. Hall saw the changes as positive movement toward becoming a normal happy child. According to Hall, the separation anxiety Jenna suffered toward her father dissipated as she developed confidence in their relationship.
Hall felt Anthony was sometimes very childlike and lacking in parenting skills. She suggested parenting classes, which Anthony attended. Anthony enrolled Jenna in preschool when Hall told him she needed to be back in school. Hall expressed her concern that the biggest problem would be Anthony's inability to control Jenna, but she noted that one of the positive changes in his parenting skills was that he was learning to set limits. In Hall's opinion, "a person with a lower IQ can be just as good or bad as a person with a very high IQ." (Italics added.)

DISCUSSION

I.

The History of the Standard of Proof
"Before making an order granting custody to a person or persons other than a parent, without the consent of the parents, the court shall make a finding that granting custody to a parent would be detrimental to the child and that granting custody to the nonparent is required to serve the best interest of the child...." (Fam.Code, § 3041.) A court may "award custody to a nonparent against the claim of a parent only upon a clear showing that such award is essential to avert harm to the child." (In re B.G. (1974) 11 Cal.3d 679, 699, 114 Cal.Rptr. 444, 523 P.2d 244, italics added.)
Although the Supreme Court in In re B.G. did not specifically explain whether "a clear showing" meant proof by clear and convincing evidence, the holding in that case has been consistently interpreted as requiring proof by the clear and convincing evidence standard whenever the court makes findings under Family Code section 3041 and its predecessor, Civil Code former section 4600. (In re Robert P. (1976) 61 Cal.App.3d 310, 318, 132 Cal.Rptr. 5 [The standard of proof in proceedings to terminate parental rights under Welfare and Institutions Code section 600 is clear and convincing evidence.]; In re Cheryl H. (1984) 153 Cal.App.3d 1098, 1114, 200 Cal.Rptr. 789 ["The more stringent standard of proof by clear and convincing evidence applies if a child is removed from her home and custody is awarded to a nonparent" pursuant to Welf. and Inst. Code, § 361, subd. (b).]; former Civ.Code, § 4600; In re Jamie M. (1982) 134 Cal.App.3d 530, 535, 536, 184 Cal.Rptr. 778 ["Before a dispositional order which awards custody to a nonparent without the consent of the parents can be rendered, there must be a clear and convincing showing an award to the parents would be detrimental to the child and that an award of custody to a nonparent is essential to avert harm to the child and required to serve the best interests of the child."]; In re W.O. (1979) 88 Cal.App.3d 906, 909, 911, 152 Cal. Rptr. 130 [In Welfare and Institutions Code section 300 proceedings, to remove a child from home, the finding that placement away from the parent is essential to avert harm to the child must be supported by clear and convincing evidence.]; In re Christopher B. (1978) 82 Cal.App.3d 608, 617, 147 Cal.Rptr. 390 [The clear and convincing standard of *50 proof is required to remove a child from the custody of parents to a foster home.]; In re Cynthia K. (1977) 75 Cal.App.3d 81, 84, 141 Cal.Rptr. 875 [The proper standard of proof to be applied in a Civil Code § 232 proceeding to free a child of parental custody and control is a showing of clear and convincing evidence.]; In re Terry D. (1978) 83 Cal.App.3d 890, 898, 148 Cal.Rptr. 221 ["... a clear and convincing proof test is required to take custody from the parent"]; In re Jeremy C. (1980) 109 Cal.App.3d 384, 392, 167 Cal.Rptr. 283 [In § 300 proceedings the preference is parental custody unless clear and convincing evidence of detriment to the child is presented.].)
This court has long interpreted In re B.G., supra, 11 Cal.3d 679, 114 Cal.Rptr. 444, 523 P.2d 244 and Civil Code former section 4600 as requiring clear and convincing proof of parental inability to provide proper care for the child and resulting detriment to the child if it remains with the parent, before custody can be awarded to a nonparent. (In re Jeannette S. (1979) 94 Cal.App.3d 52, 59, 156 Cal.Rptr. 262; In re Mark V. (1986) 177 Cal.App.3d 754, 757, 225 Cal.Rptr. 460.) In In re Jeannette S., supra, we explained the basis for this standard:
"It is a cardinal rule of our society that the custody, care and nurture of a child resides first in the parents rather than in a public agency. [Citations.] As stated in In re Carmaleta (1978) 21 Cal.3d 482 at page 489 [146 Cal.Rptr. 623, 579 P.2d 514]: `Parenting is a fundamental right, and accordingly, is disturbed only in extreme cases of persons acting in a fashion incompatible with parenthood. Thus, ... "`[t]he relationship of ... natural parent ... [and] ... children is a vital human relationship which has far-reaching implications for the growth and development of the child. [Citation.] ... [T]he involuntary termination of that relationship by state action must be viewed as a drastic remedy which should be resorted to only in extreme cases of neglect or abandonment" [citations].... [S]evering the parental relationship [must be] the least detrimental alternative for the child.'
"In furtherance of these principles, the courts have imposed a standard of clear and convincing proof of parental inability to provide proper care for the child and resulting detriment to the child if it remains with the parent, before custody can be awarded to a nonparent. (See In re B.G. (1974) 11 Cal.3d 679, 698-699 [114 Cal.Rptr. 444, 523 P.2d 244]; In re Christopher B. (1978) 82 Cal.App.3d 608, 617 [147 Cal.Rptr. 390]; In re Robert P. (1976) 61 Cal.App.3d 310, 319 [132 Cal.Rptr. 5].)" (Id. at pp. 59-60, 156 Cal.Rptr. 262.)
We recognize none of the cases we have discussed involve guardianship proceedings. However, before addressing a claim of insufficient evidence to support an award of custody to a nonparent in a guardianship proceeding, the court in Guardianship of Phillip B. (1983) 139 Cal.App.3d 407, 421, 188 Cal.Rptr. 781, acknowledged the trial court correctly applied the clear and convincing standard of proof in making its Civil Code former section 4600 findings.

II.

Guardianship of Diana B.
Joan M. relies upon Guardianship of Diana B., supra, 30 Cal.App.4th 1766, 36 Cal. Rptr.2d 447 (Diana B.), to support her claim the preponderance of the evidence is the correct standard in guardianship proceedings.
Diana B. involved a mother's appeal from a trial court order appointing two nonparents as guardians of her two minor daughters. In making its findings, the trial court applied the preponderance of the evidence standard of proof. Mother claimed on appeal that the correct standard was clear and convincing evidence. The appellate court rejected her claim and held the trial court correctly used the preponderance of the evidence standard.
The opinion acknowledges In re B.G., supra, 11 Cal.3d 679, 114 Cal.Rptr. 444, 523 P.2d 244, requires a showing that parental custody would actually harm the child, but observes the court "did not specify the standard of proof to be applied on remand." (Diana B., supra, 30 Cal.App.4th at p. 1775, 36 Cal.Rptr.2d 447.) The court apparently missed both the language in In re B.G. which provides there must be a "clear showing *51 that such award is essential to avert harm to the child[]" (11 Cal.3d at p. 699, 114 Cal. Rptr. 444, 523 P.2d 244, italics added), as well as the myriad of cases which have interpreted such language as requiring clear and convincing proof of harm.
The opinion rejects as dicta the statement in Guardianship of Phillip B., supra, 139 Cal.App.3d 407, 188 Cal.Rptr. 781, that clear and convincing evidence is the correct standard of proof in making the "critical finding" of detriment under former Civil Code section 4600:
"Although the [clear and convincing] standard was cited with approval [in Phillip B.], review of the standard was not strictly necessary to the decision since the court was not faced with the question now before us of whether a lower standard would have been sufficient to support the trial court's finding." (Diana B., supra, 30 Cal. App.4th at p. 1775, 36 Cal.Rptr.2d 447.)
Instead, the court adopted the reasoning in Cynthia D. v. Superior Court (1993) 5 Cal.4th 242, 19 Cal.Rptr.2d 698, 851 P.2d 1307 (Cynthia D.). The question in Cynthia D. was whether parental rights could be terminated on less than clear and convincing evidence of parental Unfitness in dependency proceedings pursuant to Welfare and Institutions Code section 366.26. That statutory scheme is so fundamentally different from guardianship proceedings under Probate Code section 1500 that the two cannot be compared. Indeed, the fundamental difference between the two proceedings underlies the basic rationale for the holding in Cynthia D.
"It is not the purpose of the section 366.26 hearing to show parental inadequacy, which had to have been previously established, and there is no burden on the petitioning agency to show at the section 366.26 hearing that the parents are `at fault.' The number of previous findings of `fault,' coupled with the seriousness of the resulting danger to the minor, most clearly differentiate the section 366.26 hearing from the termination hearing in Santosky v. Kramer [(1982) 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599]. A parent whose conduct has already and on numerous occasions been found to grievously endanger his or her child is no longer in the same position as a parent whose neglect or abuse has not so clearly been established...." (Cynthia D., supra, 5 Cal.4th at p. 254, 19 Cal.Rptr.2d 698, 851 P.2d 1307.)
In sharp contrast, Probate Code section 1500 guardianship proceedings contemplate one hearing at which point the court may appoint a guardian if it appears necessary or convenient. (Prob.Code, § 1514.) Such proceedings apply to adults as well as children. However, when the petition pertains to the custody of a minor, the court is governed by Family Code section 3041 which, like its predecessor former Civil Code section 4600, precludes an award of custody to a nonparent unless the court finds that granting custody to the parent would be detrimental and that granting custody to the nonparent is in the best interest of the child. (Guardianship of Kaylee J. (1997) 55 Cal. App.4th 1425, 64 Cal.Rptr.2d 662; Prob. Code, § 1514, subd. (b); Fam.Code, § 3041.) Unlike a court hearing a Welfare and Institutions Code section 366.36 matter, at the time the court hears a guardianship petition, there has been no previous finding based on clear and convincing evidence, of parental "fault," or harm to the child.
We agree with the assessment of the court in Guardianship of Stephen G, supra, 40 Cal.App.4th 1418, 47 Cal.Rptr.2d 409, that the reasoning in Diana B. is fundamentally flawed. We also agree that nothing in the Cynthia D. opinion suggests the California Supreme Court intended to reverse more than 20 years of legal precedent which requires clear and convincing evidence for an award of custody to a nonparent over the parent's objection.
We conclude the trial court applied the correct standard of proof when it denied the guardianship petition.

DISPOSITION
Affirmed. Costs on appeal to respondent.
VARTABEDIAN and BUCKLEY, JJ., concur.
NOTES
[1] The petition was later amended to include her husband, Richard M., as a petitioner.