Filed 4/26/16  In re Lily G. CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re LILY G., a Person Coming Under the Juvenile Court Law. | |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>FELICIA S.,<br><br>Defendant and Appellant. | B267104<br>(Los Angeles County<br>Super. Ct. No. DK11554) |

APPEAL from an order of the Superior Court of Los Angeles County, D. Zeke Zeidler, Judge. Reversed.

Donna Balderston Kaiser, under appointment by the Court of Appeal, for Defendant and Appellant.

Office of the County Counsel, Mary C. Wickham, County Counsel and Jessica S. Mitchell, Deputy County Counsel, for Plaintiff and Respondent.

Appellant Felicia S. appeals the juvenile court's jurisdictional finding under Welfare and Institutions Code section 300, subdivision (b) that she and Brian G. endangered their daughter, Lily G., by knowingly living in a room of a house where drug trafficking was taking place.[1] Respondent Department of Children and Family Services does not oppose. Finding insufficient evidence to support the jurisdictional finding, we reverse.

### FACTUAL AND PROCEDURAL BACKGROUND

On May 28, 2015, members of the Los Angeles Sheriff's Department executed a warrant to search a house on Zola Avenue in Pico Rivera. The search uncovered methamphetamine and two digital scales in a bottom-floor back bedroom, and two bullet-proof vests in an upstairs bedroom.[2] The owner of the house, who was a gang member and lived in the upstairs bedroom, told investigators that all the items were hers. She and her boyfriend, a fellow gang member, were arrested, as was the occupant of the bedroom in which the drugs and scales were found. The deputies concluded the house was being used for drug trafficking.[3]

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

[2] Although the detention report stated the deputies also recovered two loaded handguns, the report prepared by a detective involved in the raid did not mention any weapons and did not indicate that any of the arrestees were charged with weapons possession. The detention report stated that a "'large amount'" of methamphetamine was found inside the home, stored in "three . . . bindles." The detective's report stated that an unspecified quantity of methamphetamine was found in two plastic bags located inside a plastic box.

[3] The house had a history of drug activity, and had been raided in 2013. There were several video cameras mounted on the house, facing the front door and the nearby streets. According to investigators, such cameras were often used by drug traffickers to identify approaching threats. Prior to the May 2015 execution of the search warrant, deputies had

*(Fn. continued on next page.)*

2

Mother, Father and Lily lived in a room in the raided house. Mother and three-month old Lily were home when the raid occurred. Mother and another occupant of the house were briefly detained, but not arrested. Investigators found no evidence that Mother or Father was involved in drug trafficking. No drugs, weapons, or drug-related items were found in their room. Mother said the family had moved into the room in January, having gotten a referral from a friend of a friend. She and Father denied any knowledge of the drug-related activities of the other inhabitants of the house, stating that they tended to stay in their room and that, except for the kitchen, they had no access to other rooms. They did not leave Lily alone with anyone. The paternal grandmother said she had visited the house and had seen nothing suspicious, and that she would not have allowed her grandchild to live there had she known of the illicit activity. Mother and Father admitted using drugs in the past, but said they had been clean for many years. Both drug tested on multiple occasions and were consistently negative for all substances. Father had a history of petty criminal offenses, including possession of controlled substances and paraphernalia, and a 2013 incident of domestic violence. He had nearly completed a 52-week domestic violence counseling program. He had had no arrests since 2013. Mother and Father were both employed; Mother was on maternity leave at the time of the raid.

A petition under section 300 was filed, contending Mother and Father "created a detrimental and endangering home environment for [Lily] in that a large amount of methamphetamine and two loaded weapons were found in the child's home within access of the child." Lily was detained and placed with her paternal

---

arrested three men leaving the house, all of whom were in possession of substantial amounts of methamphetamine.

grandmother. Mother and Father left the Zola Avenue house, and with the permission of the court, moved in with the grandmother to care for Lily.[4]

At the July 2015 jurisdictional hearing, counsel for Mother and Father moved to dismiss the petition based on the absence of any evidence that the parents had knowledge of the drug-related activity occurring in the house. Lily's counsel joined in the request to dismiss. In addition, she asked the court, at a minimum, to strike the allegations that drugs and weapons were found "[with]in the access of the child," noting that three-month-old Lily was not mobile, that nothing harmful was found in the parents' room, and that the rooms in which drugs were found were ones to which neither Lily nor her parents had access.

The court struck the allegation that methamphetamine was "within access of the child," as well as the allegation that "two loaded weapons were found in the child's home, within access of the child." The court nonetheless ruled that assertion of jurisdiction was appropriate under section 300, subdivision (b) (failure to protect), finding that Father in particular should have been aware "that there's something going on" due to of "all the[] people coming in and out of the house"

---

[4]     In the jurisdictional report, the caseworker stated that Mother and Father were taking good care of the girl, and that she was developing appropriately.

4

and the presence of the video cameras.[5] The court ordered informal supervision under section 360, subdivision (c).[6] Mother appealed.[7]

## DISCUSSION

As pertinent here, assertion of jurisdiction under section 300, subdivision (b), requires proof that "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the child." A true finding under subdivision (b) requires proof of: "(1) neglectful conduct by the parent . . . ; (2) causation; and (3) 'serious physical harm or illness' to the minor, or a 'substantial risk' of such harm or illness . . . ." (*In re Rocco M*. (1991) 1 Cal.App.4th 814, 820.) The burden of proof is on the agency. (§ 355,

---

[5] The sustained allegation read: "On 5/28/15, . . . [Mother and Father] created a detrimental and endangering home environment for the child in that a large amount of methamphetamine [sic]."

[6] Section 360, subdivision (b) provides: "If the court finds that the child is a person described by Section 300, it may, without adjudicating the child a dependent child of the court, order that services be provided to keep the family together and place the child and the child's parent or guardian under the supervision of the social worker for a time period consistent with Section 301 [essentially six months (see §§ 301, subd. (a), 16506]." Unless the agency files a new petition under subdivision (c) alleging "that disposition pursuant to subdivision (b) has been ineffective in ameliorating the situation" and seeking a different disposition, there are no further court proceedings.

[7] As explained in *In re Adam D*. (2010) 183 Cal.App.4th 1250, an order assigning the family to informal supervision under section 360, subdivision (b) is tantamount to a dispositional order and thus is appealable. (*In re Adam D., supra,* 183 Cal.App.4th at pp. 1260-1261.) The dismissal, which takes place automatically unless the agency files a new petition, does not render the appeal moot; the parents are entitled to a review of the jurisdictional findings that underlie the informal supervision order, because such findings could cause adverse collateral consequences in subsequent dependency or family law proceedings. (*Id.* at pp. 1258, 1260-1261.)

subd. (a); *In re Veronica G.* (2007) 157 Cal.App.4th 179, 185.) On appeal, we will uphold the juvenile court's jurisdictional finding if it is supported by substantial evidence. (*In re J.N.* (2010) 181 Cal.App.4th 1010, 1022.) "'Substantial evidence is evidence that is reasonable, credible, and of solid value.'" (*Ibid.*) The court's findings must be based on the evidence before it, not suspicion, speculation or conjecture. (*People v. Reyes* (1974) 12 Cal.3d 486, 500; *Tracy J. v. Superior Court* (2012) 202 Cal.App.4th 1415, 1424.)

On appeal, Mother contends substantial evidence did not support the court's assertion of jurisdiction over Lily. Respondent did not file a brief, but submitted a letter stating the appeal has merit, and that "[t]he record does not establish sufficient evidence to support the [subdivision (b)] findings . . . ." Our review of the record leads us to agree. The original petition asserted that jurisdiction was warranted because "a large amount of methamphetamine and two loaded weapons were found in the child's home, within access of the child." The evidence did not substantiate the presence of loaded weapons in the house and that allegation was properly stricken. Although methamphetamine was found and seized in the raid, it was found in the room of another resident, not in the portions of the house where the child and her parents lived or "within [Lily's] access." In any event, Lily would have been unable to access any dangerous contraband as she was only a few months old. (See *In re W.O.* (1979) 88 Cal.App.3d 906, 910-911 [presence of marijuana and cocaine in home of otherwise well-cared for children, standing alone, did not support assertion of jurisdiction where drugs were kept out of their reach].)

The court attempted to amend the petition to remedy the deficiencies, but failed to replace the unproven stricken allegations with allegations supported by evidence, and the end result was an incomplete sentence of undetermined meaning. Assuming the court intended, as its comments at the hearing suggest, to find that

6

Mother and Father endangered Lily by knowingly living with her in close proximity to ongoing methamphetamine trafficking, substantial evidence did not support such finding. As noted, the family neither lived in nor had access to the rooms in which drugs were found, and officers found no basis to arrest Mother or Father for drug dealing. Nor did the arrest of three people leaving the house with methamphetamine support an inference that a steady stream of people to the house necessarily put Father or Mother on notice of drug dealing. In short, substantial evidence did not support the court's jurisdictional finding that Mother or Father knowingly placed Lily in danger by their unfortunate choice of residence.

## DISPOSITION

The jurisdictional order is reversed. All subsequent orders are vacated as moot.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

MANELLA, J.

We concur:

WILLHITE, Acting P. J.

COLLINS, J.

7