Filed 6/21/16  In re Joel R. CA2/3
Received for posting 6/22/16

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re JOEL R., A Person Coming Under the Juvenile Court Law. | B266124 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | (Los Angeles County Super. Ct. No. DK09457) |
| Plaintiff and Respondent, | |
| v. | |
| SALVADOR R., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Connie R. Quinones, Judge.  Reversed and remanded.

Patti L. Dikes, under appointment by the Court of Appeal, for Defendant and Appellant, Salvadore R.

Office of the County Counsel, Mary C. Wickham, County Counsel, R. Keith Davis, Acting Assistant County Counsel, and Aileen Wong, Deputy County Counsel, for Plaintiff and Respondent.

## INTRODUCTION

Salvador R. (father) challenges the juvenile court's jurisdictional finding concerning his 16-year-old son, Joel R. Joel came to the attention of the Department of Children and Family Services (department) after his mother, Angelica R., gave birth to another child and tested positive for amphetamines following the baby's delivery.

Father contends the jurisdictional finding is not supported by substantial evidence because the department failed to show that mother's drug use caused Joel any harm in the past, or placed him at a substantial risk of future physical harm or illness. We agree, and therefore reverse the jurisdictional and dispositional orders of the juvenile court.

## FACTS AND PROCEDURAL BACKGROUND

Father and mother are married and have one child together, Joel R. Prior to the events at issue, mother, father, and Joel lived together in the home of father's parents. Father's brother, Gonzalo, and his three children also lived in the home.

On December 10, 2014, mother gave birth to a second child, Abel R.[1] Mother tested positive for amphetamines after the birth and the department was notified. A social worker visited mother in the hospital the day after the birth. Although mother initially denied drug use, she eventually admitted she had taken some drugs in an effort to manage pain. Mother also admitted she abused drugs in the past and had recently relapsed while pregnant with Abel. In addition, mother advised the social worker that Gonzalo is Abel's father. Neither father nor Gonzalo knew mother was using drugs during the pregnancy.

For approximately two months after Abel's birth, mother continued to reside with father, Joel, Gonzalo, and the rest of the family. Father and Gonzalo both thought mother was no longer using drugs. However, mother took several on-demand drug tests

---

[1] Although the court found jurisdiction as to both Joel and Abel, father only challenges the jurisdictional finding regarding Joel. Accordingly, we do not discuss the facts which relate solely to Abel.

at the request of the department and twice tested positive for amphetamines and/or methamphetamine.

On February 3, 2015, after the second positive drug test, a department social worker spoke with mother, father, and Gonzalo. The social worker advised that mother's continuing drug use placed both Joel and Abel at risk of neglect or abuse and that the department planned to intervene and detain both children from mother. Mother agreed to move out of the family's home and agreed to have the children detained from her care and supervision. Father and Gonzalo told the social worker they were willing and available to take care of Joel and Abel, respectively. The next day, father confirmed mother was no longer living in the family home.

On February 9, 2015, the department filed a petition regarding both Abel and Joel, and named mother, father and Gonzalo in the petition. The petition alleged under Welfare & Institutions Code[2] section 300, subdivision (b), that mother was unable to care for the children due to her use of illicit drugs. The petition contained specific allegations regarding mother's positive toxicology screen following Abel's birth. As it relates to Joel, the petition alleged father "knew or reasonably should have known that mother was abusing illicit drugs," and that father allowed mother to continue to reside with Joel and have unlimited access to him. The petition stated mother's drug use, combined with father's failure to protect Joel, endangered Joel's "physical health and safety and creat[ed] a detrimental home environment for the children, placing the children at risk of serious physical harm, damage, danger, and failure to protect."

At the detention hearing on February 9, 2015, the court found that Salvador was Joel's presumed father, and ordered a paternity test to determine the identity of Abel's father. The court then detained Joel and Abel from mother, and released the boys into the care of father and Gonzalo, respectively. The court also ordered a referral to the Regional Center for Joel.

---

[2]     All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

3

According to the department's jurisdiction/disposition report, the department received two prior referrals (in 2007 and 2011) regarding Joel, both of which were unfounded. The first referral alleged mother was physically abusing Joel. However, the case worker found Joel had no bruises or marks, and Joel denied mother hit him. The case worker also observed "mother is very supportive and never leave[s] Joel alone." The second referral alleged general neglect by mother and father— specifically, Joel was missing school and was not receiving proper medical care for treatment of a seizure condition. After an initial investigation, the case worker found Joel had been seen regularly by his pediatrician and was taking medication as directed to treat the seizure condition.

In connection with the current case, mother reported she had never abused methamphetamine when either Joel or father was present. She said "she was able to conceal her drug abuse issues because [father] trusted her and never questioned her behaviors." Mother said she used drugs in the past, but had been sober for 11 years prior to her relapse during pregnancy. She never completed a rehabilitation program, but simply stayed away from friends who she knew abused drugs. Mother explained that she relapsed during the last trimester in her pregnancy because she was experiencing pain from contractions, and was also stressed due to her strained relationship with father and the conflict with father's parents, as a result of her affair with Gonzalo. Mother also said she was "depressed" and "lonely," which made her want to continue to use drugs. However, mother told the case worker she was "clean" and was diligently looking for a drug rehabilitation program.

During the investigation, father told the social worker assigned to the case he never had any idea mother was using drugs during their 16-year marriage. Although he was initially supportive of mother's rehabilitation efforts, father became frustrated after her second positive test. Father told mother she had to move out of the house because he "was not going to risk getting the kids taken away." According to the case worker, father understood that he could not allow mother to return to the family home without the permission of the department or the court.

4

The social worker met with Joel several times during the course of the investigation. Joel is diagnosed with mild autism and learning disabilities. According to the department's reports, Joel is "shy," "soft spoken," and although he doesn't speak often or at length, he smiles a lot when spoken to. Joel attends special education classes at a public high school, and enjoys playing baseball. The social worker observed that the family home was amply furnished, and Joel was comfortable in his home and with his father. Joel was healthy and well-nourished, and received regular medical care. When asked about discipline, Joel said that he sometimes had to "face the wall" or "stand [in] the corner." Joel denied being hit, being called names, or being inappropriately touched by anyone in the household. Joel said he didn't know what drugs were, but learned from his teacher that drugs are "bad." He also said he had never seen anyone abuse drugs or alcohol. When the social worker asked if Joel knew whether his mother has abused drugs or alcohol, he shook his head to indicate "no." In short, "Joel was unable to provide any details about the mother's drug abuse issues."

On April 1, 2015, the court held an adjudication hearing. The court sustained the petition, finding jurisdiction under section 300, subdivision (b), as to both Joel and Abel. However, the court struck the allegation that father and Gonzalo failed to protect the boys from their mother's drug use. The court renewed the existing placement with father and Gonzalo, respectively. Mother contested disposition, and the court set the matter for a further hearing on May 13, 2015. At that time, the department submitted a last minute information which indicated mother was participating in an outpatient drug rehabilitation program as well as counseling and classes. Although mother was not living in the family home at that time, she had not yet found stable housing for herself. Mother also advised the department that she was pregnant with another child by Gonzalo, and the case worker observed that mother's relationships with father and Gonzalo continued to cause stress among father's family members. However, the department noted that "[t]he children continue to do well and no concerns have been observed."

5

At the disposition hearing, the court ordered Joel and Abel removed from mother. The court further ordered that the boys remain in the home of their respective fathers, and ordered monitored visitation for mother, with one 2-hour unmonitored visit per week. Father timely appeals.

## DISCUSSION

### A. Standard Of Review.

We review the juvenile court's jurisdiction findings for substantial evidence. (*In re Kadence P.* (2015) 241 Cal.App.4th 1376, 1384.) "Under this standard '[w]e review the record to determine whether there is any substantial evidence to support the juvenile court's conclusions, and we resolve all conflicts and make all reasonable inferences from the evidence to uphold the court's orders, if possible.' " (*Ibid.*, brackets are in the original.) However, inferences drawn from speculation or conjecture do not constitute substantial evidence and cannot support a jurisdictional finding. (*In re Drake M.* (2012) 211 Cal.App.4th 754, 763.) " 'The ultimate test is whether it is reasonable for a trier of fact to make the ruling in question in light of the whole record.' [Citations.]" (*Ibid.*)

### B. Substantial Evidence Does Not Support the Jurisdictional Finding.

Father contends the court erred by asserting jurisdiction over Joel because the evidence does not establish that mother's drug use caused Joel to suffer, or placed him at risk of suffering, serious physical harm or illness. We agree.

Section 300, subdivision (b)(1), provides for jurisdiction when a "child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the child, . . . or by the inability of the parent or guardian to provide regular care for the child due to the parent's or guardian's mental illness, developmental disability, or substance abuse." The department must prove, by a preponderance of the evidence, three elements: "(1) neglectful conduct by the parent in one of the specified forms; (2) causation; and (3) 'serious physical harm or illness' to the minor, or a 'substantial risk' of such harm or illness." (*In re Rocco M.* (1991) 1 Cal.App.4th 814,

6

820; § 355, subd. (a).) "The third element 'effectively requires a showing that at the time of the jurisdiction hearing the child is at substantial risk of serious physical harm in the future (e.g., evidence showing a substantial risk that past physical harm will reoccur). [Citations.]' " (*In re David M.* (2005) 134 Cal.App.4th 822, 829.) "Section 300, 'subdivision (b) means what it says. Before courts and agencies can exert jurisdiction under section 300, subdivision (b), there must be evidence indicating that the child is exposed to a *substantial* risk of *serious physical* harm or illness.' [Citations.]" (*In re John M.* (2013) 217 Cal.App.4th 410, 418.)

The department cited mother's drug use as the sole basis for jurisdiction over Joel. The department described the situation in its jurisdiction/disposition report: "Mother has a history of substance abuse and is a current abuser of methamphetamines. The mother used illicit drugs during the pregnancy of the child Abel. Therefore, the children's safety cannot be ensured in the home of their mother until the mother complies with the case plan outlined in [the jurisdiction/disposition] report." But many cases have concluded that a parent's use of drugs, standing alone, does not bring a minor within the jurisdiction of the dependency court. (See *In re Destiny S.* (2012) 210 Cal.App.4th 999, 1003 [the mother's use of marijuana and methamphetamine insufficient to support jurisdiction under section 300, subdivision (b)]; *In re David M., supra,* 134 Cal.App.4th at p. 830 [jurisdiction under section 300, subdivision (b), reversed where the mother had a continuing substance abuse problem, but there was no evidence of a specific, defined risk of harm from mother's substance abuse]; *In re Rocco M., supra,* 1 Cal.App.4th at p. 817 [the mother's cocaine use was not sufficient basis for jurisdiction under section 300, subdivision (b)]; *In re W.O.* (1979) 88 Cal.App.3d 906, 910 [the parents' drug use and discovery of drugs in the family home is insufficient to support the exercise of dependency jurisdiction].) Rather, the department had the burden to present evidence of a specific, non-speculative and substantial risk of serious physical harm to Joel based on mother's conduct. (*In re David M.*, *supra*, 134 Cal.App.4th at p. 830.) The department failed to make that showing here.

The record in this case contains no evidence that mother's current or prior use of methamphetamine caused harm to Joel or placed him at risk of harm. In fact, mother stated she never used drugs in the family home or in the presence of anyone in the family. (Cf. *In re Alexis E.* (2009) 171 Cal.App.4th 438, 452 [finding risk of harm based on the father's use of marijuana in the home that exposed the children to the "negative effects of secondhand" smoke].) She successfully concealed her drug use, such that no one in the family even suspected she was using drugs. Moreover, the record contains only positive observations about Joel and his home environment. The social worker observed Joel to be healthy and well cared for; Joel received regular medical care; Joel was comfortable in the family home and with his father; and there was absolutely no evidence of inappropriate discipline or other abuse.

The department argues the court could have inferred that mother was under the influence while she was with father and Joel at some unknown point in the past because mother admitted she used drugs for five years after Joel was born. Certainly, past harmful conduct is relevant to the current risk of future physical harm to a child. (See *In re David M., supra,* 134 Cal.App.4th at p. 831 ["past abuse or neglect can certainly be an indicator of future risk of harm"]; *In re Rocco M., supra,* 1 Cal.App.4th at p. 824 ["evidence of past conduct may be probative of current conditions"].) However, the department fails to provide any evidence that mother's drug use resulted in any harm to Joel in the past, such that it would support a reasonable inference that he is currently at substantial risk of serious physical harm or illness. (Cf. *In re Rocco M., supra,* 1 Cal.App.4th at p. 824 ["past infliction of physical harm by a caretaker, standing alone, does not establish a substantial risk of physical harm; '[t]here must be some reason to believe the acts may continue in the future' "].)

We note this is not a case like *In re R.R.*, in which the father's use of methamphetamine required his hospitalization and compromised his ability to care for his children. (*In re R.R.* (2010) 187 Cal.App.4th 1264, 1284.) Nor is it like *In re Rocco M.* in which the court held evidence that a mother that exposed her 11-year-old son to her drug use, "thus impliedly approving such conduct and even encouraging him

8

to believe that it is an appropriate or necessary means of coping with life's difficulties," was sufficient to support a jurisdictional finding. (*In re Rocco M., supra*, 1 Cal.App.4th at p. 825.)

The department correctly observes that, where very young children are at issue, "the finding of substance abuse is prima facie evidence of the inability of a parent or guardian to provide regular care resulting in a substantial risk of physical harm." (*In re Drake M., supra,* 211 Cal.App.4th at p. 767; *In re Rocco M., supra,* 1 Cal.App.4th at p. 824 ["tender years"].) The so-called "tender years" rule recognizes that very young children are unable to care for themselves and require constant supervision; consequently, a parent's inability to care for them—even for a short time—poses a significant danger. The department urges us to use this principle to affirm the jurisdictional finding in this case because, although Joel is 16-years-old, he is autistic and has a seizure disorder. Without deciding whether, or under what circumstances, the "tender years" rule could be extended to include an older child with disabilities, we decline to do so here. Joel takes medication to control his seizure disorder. Although Joel has significant learning disabilities, he attends a public high school and plays some sports. There is simply no evidence on this record from which we could reasonably infer that Joel requires the type of constant care and close supervision necessary to preserve the health and safety of an infant or toddler.

Finally, the department asserts that, in the absence of department supervision, father could allow mother to move back in to the family home. While true, this speculative assertion does not lead to a reasonable inference that Joel is *currently* at substantial risk of serious physical harm or illness. (See *In re David M., supra*, 134 Cal.App.4th at p. 828 [inferences must be a product of logic and reason and must rest on the evidence; inferences that are the result of conjecture cannot support a jurisdictional finding]; *In re Rocco M., supra,* 1 Cal.App.4th at p. 824 [noting "the question under section 300 is whether circumstances *at the time of the hearing* subject the minor to the defined risk of harm"].) We also reject the department's suggestion that the jurisdictional finding should be affirmed because it would be beneficial for

father to take a drug awareness class. The fact that family maintenance services would be beneficial does not support the exercise of dependency jurisdiction in the first instance. (§ 300.)

In short, the department failed to show a nexus between mother's use of illegal substances and a substantial risk of harm to Joel. Accordingly, the court's jurisdictional finding is not supported by substantial evidence.[3] Because we conclude the jurisdictional order must be reversed, the dispositional order as to Joel must also be reversed. (See *In re James R.* (2009) 176 Cal.App.4th 129, 137.) On remand, if the department files a subsequent petition based upon new developments which occurred during the pendency of the appeal, the court may consider it. (See *In re Ryan K.* (2012) 207 Cal.App.4th 591, 597-598.) Otherwise, given the absence of a valid basis for jurisdiction over Joel, the court should dismiss the petition.

---

[3] In light of our holding that the court's jurisdictional order must be reversed, it is unnecessary for us to address father's argument regarding the court's refusal to issue an exit order.

## DISPOSITION

The jurisdictional and dispositional orders regarding Joel are reversed.  We remand to the juvenile court for further proceedings consistent with this opinion.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

LAVIN, J.

WE CONCUR:

EDMON, P. J.

ALDRICH, J.

11