**FILED**
**OCTOBER 19, 2017**
In the Office of the Clerk of Court
WA State Court of Appeals, Division III

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Dependency of | ) | |
| | ) | No. 34883-1-III |
| W.A. | ) | |
| | ) | |
| | ) | UNPUBLISHED OPINION |
| | ) | |

FEARING, C.J. — Kimberly Anderson appeals from the trial court's order declaring her son to be a dependent of the State of Washington. She also appeals placement of the boy with the Department of Social and Health Services (DSHS). Because substantial evidence supports the trial court's findings and those findings support the trial court's orders, we affirm.

## FACTS

This child dependency action involves a mother and son, respectively Kimberly Anderson and Wesley Anderson. Both names are fictitious. Both Andersons suffer from disabilities.

In 2005 and one year before Wesley's birth, Kimberly Anderson sustained injuries from a car accident. As a result of the accident, she suffered a cervical spine injury and spinal stenosis and still suffers from posttraumatic stress syndrome (PTSD), depression, anxiety, and fibromyalgia. To cope with her depression and anxiety, Kimberly takes a small dosage of antidepressants as needed.

On November 15, 2006, Kimberly Anderson gave birth to Wesley, her fifth child. We assume that no other children then lived with Kimberly. At age three, a physician diagnosed Wesley with selective mutism. Selective mutism is an anxiety disorder characterized by a child or adolescent's inability to speak in one or more social settings, such as school, despite being able to speak comfortably in other settings, like home with family. Wesley also bears a two-year developmental delay.

DSHS records show findings for both physical abuse and neglect of all five of her children by Kimberly Anderson, including three instances with Wesley. In 2007, when Wesley reached one year of age, Kimberly failed to take Wesley for well-child exams, and the infant dropped in the growth charts to the twenty-fifth percentile.

Because of Wesley Anderson's developmental delay, Spokane School District found Wesley Anderson eligible for special education prior to his entry into the district's pre-kindergarten program. The district prepared an individualized education program (IEP) for Wesley. Under the program, Wesley attended the district's pre-kindergarten program during the 2012-2013 school year at Roosevelt Elementary.

On May 28, 2013, Wesley Anderson's school district IEP team met to develop an IEP for school year 2013-2014. The IEP team invited Kimberly Anderson to attend, but she did not participate. During the meeting, the IEP team decided that Wesley would attend an integrated kindergarten class. Based on Wesley's pre-kindergarten teacher's experiences, the school district determined to place a weighted vest on the boy if he could not focus. A weighted vest assists a child in focusing during sensory overload and comforts the child like a reassuring hug. Wesley began his 2013-2014 school year in an integrated kindergarten class at Lincoln Heights Elementary.

On September 4, 2013, Wesley Anderson's kindergarten teacher placed the weighted vest on Wesley because he turned in circles during story time. When Wesley told his teacher the vest felt hot, she instructed him to remove the vest. During a parent and teacher meeting later that day, the teacher told Kimberly Anderson that she used the vest on Wesley. Kimberly expressed displeasure. Kimberly removed Wesley from the kindergarten class.

Kimberly Anderson began home schooling Wesley. According to Kimberly, her homeschooling curriculum included spelling, writing, reading, math, physical education, and art. Kimberly, however, did not comply with the statutory requirement that Wesley take yearly tests. According to Kimberly, she daily assisted Wesley in improving his speech. Kimberly did not, however, engage any professionals to provide her son with

3

speech and mental health therapy to address his developmental delays and selective mutism.

At unknown dates, two pediatricians respectively recommended that Wesley Anderson undergo treatment at Spokane Mental Health and Frontier Behavioral Health. According to Kimberly, she attempted to enroll Wesley in these services, but the Spokane clinic refused to assist the boy because of his young age and because the facility did not specialize in selective mutism. Kimberly also could not afford a professional speech therapist. According to Kimberly, she met with the speech pathologist at Wilbur Elementary School, and the pathologist complimented Kimberly for her speech therapy with Wesley.

In 2014, Kimberly Anderson commenced undergoing seizures as a result of her physician doubling her dosage of Wellbutrin, an antidepressant. She now ingests Topamax to control her seizures. According to a 2016 physician's note, Kimberly regularly attended scheduled appointments with the physician treating her epilepsy and actively participated in her healthcare. Kimberly suffers from smaller seizures that do not require hospitalization.

In 2014, Kimberly Anderson tested positive for cocaine. Kimberly explained the positive test as the result of smoking a bowl of marijuana, unaware that the owner of the bowl placed other controlled substances in it. Kimberly acknowledges, however, that she received treatment for cocaine use in 2000. In 2000, Kimberly tested positive for cocaine

4

at the birth of another child. The department removed that child from her care upon the child's birth. Kimberly insists that she has never knowingly ingested cocaine since her release from a treatment facility in 2000. She admits use of marijuana for medicinal purposes.

On September 3, 2015, Kimberly Anderson filed a due process complaint against the school district with regards to the use of the weighted vest. She claimed the vest traumatized Wesley. During a hearing before an administrative law judge, Kimberly testified that she waited two years to bring the claim because she was collecting evidence. The administrative judge found that the kindergarten teacher inappropriately used the weighted vest, but Kimberly presented no evidence of any harm to Wesley or his education. Accordingly, the judge declined to award any compensatory education and instead directed the school staff to receive training on the use of weighted vests and other positive behavioral interventions. Kimberly wanted to appeal the administrative law judge's decision, but did not possess the means to do so.

In January 2016, Kimberly and Wesley Anderson's landlord evicted the two from their home. Kimberly suffered a seizure in January 2016 because she failed to take her medication during the move. She left her medication in a moving van. Kimberly has taken her medication since. Kimberly required hospital care for the January seizure, but the hospital released her the same day.

5

After the eviction, Kimberly and Wesley were homeless. They alternated living at Kimberly's older son's home, a hotel, and the Salvation Army. In 2016, DSHS received five notices of abuse and neglect of Wesley by Kimberly.

In late June 2016, Kimberly Anderson learned she could not rent a prospective apartment, and the Salvation Army notified her that she must leave the organization's housing. Consequentially, mother and son returned to another motel. On June 30, 2016, Kimberly Anderson suffered a seizure that rendered her unconscious in the motel room she shared with Wesley. Kimberly believes stress caused the seizure.

Wesley Anderson witnessed his mother's seizure and attempted to revive her by sprinkling water on her hands, a method that worked on other occasions. Kimberly did not awaken on June 30. Fortunately, a housekeeper knocked on the door, and Wesley opened the door and asked for help. An ambulance transported Kimberly and her son to the hospital. At the emergency room, Kimberly experienced two more seizures. The emergency room doctors assumed that Kimberly failed to ingest her seizure medication because hotel staff reported eyeing Wesley attempting to administer his mother the medication. Physicians, however, did not test Kimberly's blood to determine if she took her seizure medications. Hospital staff administered two different anti-epileptic drugs, to which Kimberly reacted poorly. Consequently, Kimberly remained in the hospital for five days.

6

Hospital staff contacted the Spokane Police Department and Child Protective Services (CPS) about Wesley's safety. Michelle Woodward, a Department of Social and Health Services social worker, visited the hospital. An unidentified doctor and nurse told Woodward that Kimberly lived in an unsafe condition due to a continued refusal to follow medical advice or take medications. When police officers arrived at the hospital, they removed Wesley from Kimberly's care and placed the boy in protective custody.

Michelle Woodward offered Kimberly Anderson psychological and counseling services, random urinalyses, a chemical dependency assessment, and drug treatment. Kimberly declined all offered services.

## PROCEDURE

On July 5, 2016, DSHS filed a petition seeking a dependency for Wesley Anderson claiming abuse or neglect and that Wesley lacked a parent, guardian or custodian capable of adequately caring for him to the detriment of his development. On July 6, the trial court signed a shelter care order that placed Wesley in the care of his brother, David Casilas. The court extended the order on July 29 and August 23.

At some unknown date, David Casilas relinquished care of Wesley Anderson because of the care's strain on his family and threatening communication from Kimberly. DSHS could not later identify any other relatives willing to assume custody of Wesley.

At some unknown date, DSHS substituted Danelle Stone as the social worker to assist Kimberly Anderson. Stone referred Anderson to providers for various services,

7

including a parenting assessment, random drug and alcohol testing, a chemical dependency evaluation, and mental health treatment and counseling. Anderson visited a mental health clinic but received no treatment. During the visit, Anderson limited her comments to complaints about CPS. Anderson engaged in no services recommended by Stone.

The trial court permitted visitation of Kimberly Anderson with Wesley during the dependency pendency. When Kimberly visited Wesley at the first visitation facility, she stared at her son for long periods of time. Wesley repeatedly asked: "[W]hy are you looking at me like that?" "[W]hat's going on?" Kimberly did not respond. Clerk's Papers (CP) at 213. Kimberly accused her son of lying to her when he described a reward system used at his daycare facility. The first facility ceased visitation services, and Kimberly continued her visits at another facility.

The trial court conducted a contested dependency fact-finding hearing on September 13 and 14, 2016. Trial witnesses included Kimberly Anderson, social worker Michelle Woodward, social worker Danelle Stone, and the court appointed special advocate Kathy Bushnell.

Kimberly Anderson testified that she was capable of meeting her son's physical and emotional needs. Kimberly expressed, however, a willingness, in the event the court did not dismiss the dependency petition, to engage in services recommended by CPS, if the court would return Wesley to her care. Testimony suggested, nevertheless, that this

8

willingness was limited to those services Kimberly agreed she needed. Kimberly expressed frustration because social worker Danelle Stone acted mean, rude and short with her. She further complained that Stone did not offer those services Kimberly deemed helpful in reuniting with her son. Kimberly confirmed her mental health disorders, and on occasion, during trial, refused to answer certain questions "[d]ue to the stress of her disorder." CP at 114.

During the dependency trial, Michelle Woodward expressed her concern for Wesley Anderson's safety. Woodward worried not only about Kimberly's seizures, but also Kimberly's history with CPS. She fretted about the lack of a caregiver nearby when Kimberly suffered from a seizure. Wesley had reported to Woodward of the frequency of Kimberly's seizures and his attempts to care for his mother. Woodward recognized, nonetheless, that Kimberly then complied with her medication plan. Michelle Woodward also detailed, for the trial court, Kimberly Anderson's history with DSHS.

Social worker Danelle Stone similarly voiced concern for Wesley Anderson's safety, and she recommended that Wesley remain in foster care. Stone identified the following parental deficiencies with regards to Kimberly: (1) a substance abuse history, (2) unaddressed mental health concerns, (3) neglect of her own personal health care, and (4) failure to meet Wesley's health and educational needs as recommended by professionals. Stone explained that Kimberly's unaddressed mental health problems

9

compromised the safety of Wesley. Stone opined, based on Kimberly's positive cocaine test in 2014 and earlier substance abuse, that Kimberly was chemically dependent.

During trial, Danelle Stone described Wesley as a happy child who enjoyed drawing, My Little Pony, and Marvel Superheroes. He performed well in school and interacted well with other children. Stone testified that school staff reported that Wesley encountered "boundary issues," but Stone failed to explicate the purported issues. CP at 215. Danelle Stone testified that Wesley Anderson receives counseling at Frontier Behavioral Health and underwent a wellness check.

After hearing testimony, the trial court concluded that the State proved by a preponderance of the evidence that Kimberly Anderson, as a result of a culmination of events, neglected Wesley's basic needs. Thus, the court ruled Wesley Anderson to be a dependent of the State and ordered foster home placement. The court stated:

> But that's not the only thing that caused the Department concern. And that for me is like the very tip of the iceberg. And I think that's where we need to step back, and I want to make sure you're understanding that this isn't about your seizure, [Kimberly]. When law enforcement had your child in their custody and contacted CPS, what happened was that Ms. Woodward stepped in and was able to uncover larger concerns about [Wesley's] well-being and it wasn't simply that, [Kimberly], that you have a condition with your seizures or that you were not maintaining your health.
> What was discovered is that because of several issues going on in your life, the seizure is just one issue. But because of several things going on in your life, there are very serious concerns about [Wesley's] health and well-being that have been neglected. And when I read the statute, that is what I'm focused on.
> And when I say that, what I'm talking about is, first and foremost, the educational needs of your son have been being neglected. And I

10

understand the reasoning from your standpoint and your rationale for why you haven't had him in school. That you had a concern about a weighted vest being used on him, that you filed a Complaint against the school, but you haven't been acting with your due diligence to ensure that his educational needs were met.

. . . .

On top of that then, that lead[s] to when your child was in school, he had additional needs that were being met through the School District. Those additional needs were his therapies. He had speech therapy that was being met through the School District. He had mental health and emotional health care needs that needed to be met, and had he been going to public school, those needs could have and would have been met free of charge in a public school setting.

. . . .

Additionally, what I have observed through your testimony is that you have been resistant to reasonable attempts to give you help and assistance. And that coupled with the history of your previous involvement with CPS, and your previous mental health self-related, self-disclosed mental issues, your anxiety, your PTSD, leaves me to have concerns about your mental health condition and how that affects your decisions.

. . . .

. . . [T]here was reference in a couple of different places to a self-reported use of marijuana, which while it is legal, if marijuana or if alcohol interferes to the level that you are taking such amounts that it interferes with your parenting or your decision making, even legal substances can become problematic with parenting.

CP at 270-73.

The trial court entered the following findings of fact:

B. The Department most recently became involved with this family because of the mother's seizure in June. The seizure occurred despite the mother regularly taking her seizure medication for her seizure disorder. When the mother began seizing, the child became scared. A housekeeper found them, and called emergency authorities. The mother's inability to take care of [Wesley] while she is suffering from a seizure is not the only concern. The court has serious concern about the child's health and well-being in the mother's care. His educational needs were being neglected.

11

The court understands why the mother removed [Wesley] from District 81 public schooling, but it does not excuse her from providing for and meeting all the child's needs, including speech therapy, which is available through public school at no cost to her. The mother was not complying with the law regarding home schooling, such as having an appropriate person/agency supervising her home schooling and yearly testing. She chose not to enroll [Wesley] in public school, even though she states she could not find anyone that she could afford willing to provide the services recommended for the child by the child's doctor. The school offered to mediate the concerns the mother had about letting the child return to public school, but the mother refused to participate. The court is concerned that the mother's mental health is affecting her ability to make good decisions for [Wesley]. The mother admits to using marijuana. It is necessary to determine whether her use is impacting her parenting.

C. Dependency is established pursuant to RCW 13.34.030(6)(b) (abuse or neglect) and (c).

D. It is contrary to the child's welfare to return home. The child should be placed or remain in the custody, control, and care of DSHS/DCFS because:

[X] A manifest danger exists that the child will suffer serious abuse or neglect if the child is not removed from the home and an order under RCW 26.44.063 would not protect the child from danger.

E. Reasonable efforts have been made by DSHS/DCFS to prevent or eliminate the need for removal of the child from the child's home and have been unsuccessful because:

[X] The health, safety, and welfare of the child cannot be adequately protected in the home.

[X] Specific services have been offered or provided to the parent(s), guardian or legal custodian and have failed to prevent the need for out-of-home placement and make it possible for the child to return home. The specific services offered or provided are outlined in the Dependency Petition and subsequent documents filed herein and are incorporated by reference.

CP at 317-18. The trial court entered the following conclusion of law:

The child is found dependent pursuant to RCW 13.34.030(6)(b) and (c).

12

No. 34883-1-III
*In re the Dependency of W.A.*

CP at 319.

## LAW AND ANALYSIS

On appeal, Kimberly Anderson asks for reversal of the order of dependency because DSHS failed to prove that she either abused or neglected Wesley or that her parenting of Wesley exposed him to a substantial risk of harm. She assigns error to the trial court's (1) reliance on her epilepsy to order a dependency, (2) assumption that her mental health diagnoses affected her ability to parent, (3) finding that her violation of Washington's homeschooling requirements warranted a dependency, and (4) conclusion that her consumption of marijuana interfered with her ability to parent. In the alternative, Kimberly argues that DSHS failed to demonstrate the need for out-of-home placement.

Declaring a child "'dependent'" transfers legal custody to the State. *In re Dependency of Schermer*, 161 Wn.2d 927, 942, 169 P.3d 452 (2007). After filing a dependency petition, a fact-finding hearing is held to decide if the allegations are true. *In re Dependency of Schermer*, 161 Wn.2d at 942. The State must prove by a preponderance of the evidence that the child meets one of the statutory definitions of dependency under RCW 13.34.130. *In re Welfare of Key*, 119 Wn.2d 600, 612, 836 P.2d 200 (1992). In this case, the trial court found Wesley dependent under RCW 13.34.030(6)(b) and (c).

In challenging the dependency, Kimberly Anderson assigns error to findings of fact B, C, D and E. She also contends that these findings do not support the conclusion

13

of law that Wesley is a dependent child pursuant to RCW 13.34.030(6)(b) and (c).

Appellate review is limited to whether substantial evidence supports the trial court's findings and whether the findings support its conclusions of law. *In re Dependency of Schermer*, 161 Wn.2d at 940. Substantial evidence exists if, when viewing the evidence in the light most favorable to the prevailing party, a rational trier of fact could find the fact more likely than not to be true. *In re Welfare of X.T.*, 174 Wn. App. 733, 737, 300 P.3d 824 (2013). Appellate courts do not reweigh evidence or reassess witness credibility. *In re Welfare of X.T.*, 174 Wn. App. at 737.

Kimberly Anderson contests finding of fact B. We repeat the portions of the finding as challenged:

> The Department most recently became involved with this family because of the mother's seizure in June. The seizure occurred despite the mother regularly taking her seizure medication for her seizure disorder. When the mother began seizing, the child became scared. A housekeeper found them, and called emergency authorities. The mother's inability to take care of [Wesley] while she is suffering from a seizure is not the only concern.

CP at 317.

Kimberly Anderson contends that the trial court impermissibly relied on her epilepsy to order a dependency. She asserts that her disability should not deprive her of the fundamental right to care, custody and companionship of her child. We agree that a mother's epilepsy by itself should not be grounds for dependency. The trial court, however, did not base the dependency solely on her disability. In the court's oral

14

comments, it remarked: "that for me is like the tip of the iceberg . . ., I want[ed] to make sure you're understanding that this isn't about your seizure . . ., it wasn't simply [because] you have a condition with your seizures or that you were not maintaining your health." CP at 270.

Substantial evidence supported the trial court's finding that her inability to care for Wesley during a seizure presented a danger to Wesley's safety. Social workers Michelle Woodward and Danelle Stone expressed concern for Wesley's safety in the event Kimberly Anderson experiences a seizure. On one occasion, the seizure led to Wesley being unsupervised. Wesley reported that his mother often suffered from seizures, when he was alone to care for her.

Kimberly Anderson next challenges that portion of finding of fact B that reads: "[t]he court is concerned that the mother's mental health is affecting her ability to make good decisions for [Wesley]." CP at 318. Anderson claims no evidence demonstrated a correlation between her mental health status and her ability to parent.

We conclude that substantial evidence supports the court's finding that Kimberly Anderson's mental health affects her ability to render good decisions regarding Wesley's health, safety and welfare. Anderson testified that she suffered from posttraumatic stress disorder, depression, and anxiety. Her testimony reflected resistance to offers of assistance and programs to address her mental health issues. She refused to answer some

15

questions on the basis of "stress of [her] disorder." CP at 114. DSHS offered Anderson psychological and counseling services, but she refused the services.

The trial court did not impose the dependency solely on the basis of mental health disorders. Nevertheless, evidence showed that the disorders impeded Kimberly Anderson from meeting Wesley's needs. Wesley also suffers from disabilities that require special attention.

Kimberly Anderson next complains that the trial court incorrectly found that she neglected Wesley's education needs because she did not fully comply with home schooling requirements. Nevertheless, substantial evidence supported a finding that Anderson neglected her son's educational and developmental needs. She failed to send him to a speech professional. She probably failed to school him at home and certainly failed to show her education's proficiency by testing. At trial, Anderson still failed to recognize her failures with regard to Wesley's education.

RCW 28A.200.010 outlines the requirements for a parent whose child receives home-based instruction. RCW 28A.200.010(1)(c) requires the administration of an annual standardized achievement test by a qualified individual or that an annual assessment of the student's academic progress is written by a certified person who is currently working in the field of education. The law considers the failure of parent to comply with any of the terms set forth in RCW 28A.200.010 as a failure of such parent's child to attend school without justification.

16

In finding of fact B, the trial court wrote: Kimberly Anderson "was not complying with the law regarding home schooling, such as having an appropriate person/agency supervising her home schooling and yearly testing." CP at 317. Anderson correctly observes the trial court's error in assuming that some person or entity must supervise the home schooling. This error is irrelevant. The court correctly noted the lack of testing and other evidence established the lack of schooling for Wesley.

Next, Kimberly Anderson challenges that portion of finding of fact B, in which the trial court found that "[t]he mother admits to using marijuana. It is necessary to determine whether her use is impacting her parenting." CP at 318. She contends that her consumption of marijuana does not support a finding of dependency because DSHS failed to present any evidence that her consumption interfered with her ability to parent. In its brief, DSHS omits a response to this contention.

We agree with Kimberly Anderson that her smoking marijuana by itself is not grounds for a child dependency. Nevertheless, the trial court did not base the dependency only on the marijuana use, if at all. The court in its oral ruling expressed concern as to the extent of the cannabis use. The court ordered an assessment of that use. Other significant reasons supported the dependency.

Kimberly Anderson assigns error to finding of fact C and the conclusion of law, wherein the trial court found and concluded that DSHS established dependency pursuant to RCW 13.34.030(6)(b) and (c). We disagree. We have already confirmed that the trial

17

court committed only harmless error in the findings of fact. The sustained findings support the conclusion that Anderson neglected Wesley as the law defines the term.

RCW 13.34.030(6)(b) provides that a child is dependent when a person legally responsible for the care of the child abuses or neglects him, as defined by RCW 26.44.020(16). The statute identifies "[n]egligent treatment or maltreatment" as

> an act or a failure to act, or the cumulative effects of a pattern of conduct, behavior, or inaction, that evidences a serious disregard of consequences of such magnitude as to constitute a clear and present danger to a child's health, welfare, or safety, including but not limited to conduct prohibited under RCW 9A.42.100.

The statute further provides that "[w]hen considering whether a clear and present danger exists, evidence of a parent's substance abuse as a contributing factor to negligent treatment or maltreatment shall be given great weight." RCW 26.44.020(16). Poverty or homelessness does not constitute negligent treatment or maltreatment in and of itself under RCW 26.44.020(16).

RCW 13.34.030(6)(c) states that a child is dependent when the child

> [h]as no parent, guardian, or custodian capable of adequately caring for the child, such that the child is in circumstances which constitute a danger of substantial damage to the child's psychological or physical development.

The trial court need not consider any specific factors when determining whether a parent is capable of parenting under RCW 13.34.030(6)(c). Instead, the inquiry is highly fact-specific. *In re Dependency of Schermer*, 161 Wn.2d at 951-52.

18

The State need not prove that a parent is unfit to prove a dependency.

> A dependency based on RCW 13.34.030[(6)](c) does not turn on parental "'unfitness'" in the usual sense. Rather, it allows consideration of both a child's special needs and any limitations or other circumstances which affect a parent's ability to respond to those needs. Under RCW 13.34.030[(6)](c), it is unnecessary to find parental misconduct in order to find a child dependent.

*In re Dependency of Schermer*, 161 Wn.2d at 944. When evaluating evidence to determine whether a child is dependent, trial courts have broad discretion and considerable flexibility to reach a decision that recognizes both the welfare of the child and parental rights. *In re Dependency of Schermer*, 161 Wn.2d at 952.

Under RCW 13.34.030(6)(c), a child is dependent when the child "[h]as no parent, guardian, or custodian capable of adequately caring for the child, such that the child is in circumstances which constitute a danger of substantial damage to the child's psychological or physical development." The sustained findings and substantial evidence also supports the conclusion that Anderson is not capable of adequately caring for Wesley and the incapability exposes Wesley to a substantial damage to his psychological and physical development. Anderson did not assist Wesley with his two year developmental delay. She took him to no medical or dental appointments.

Kimberly Anderson challenges the trial court's placement of Wesley with foster parents. She contends that, even if Wesley is a dependent of the State, Wesley could reside with her with the assistance of DSHS.

19

No. 34883-1-III
*In re the Dependency of W.A.*

RCW 13.34.130(5) allows the trial court to order placement of the dependent child outside the home. The statute declares, in relevant part:

> . . . An order for out-of-home placement may be made only if the court finds that reasonable efforts have been made to prevent or eliminate the need for removal of the child from the child's home and to make it possible for the child to return home, specifying the services, including housing assistance, that have been provided to the child and the child's parent, guardian, or legal custodian, and that preventive services have been offered or provided and have failed to prevent the need for out-of-home placement, unless the health safety, and welfare of the child cannot be protected adequately in the home, and that:
> (a) There is no parent or guardian available to care for such child;
> . . . .
> (c) The court finds, by clear, cogent, and convincing evidence, a manifest danger exists that the child will suffer serious abuse or neglect if the child is not removed from the home and an order under RCW 26.44.063 would not protect the child from danger.

RCW 13.34.130(5). In dependency proceedings, discretionary placements are reviewed for abuse of discretion. *In re Dependency of Ca.R.*, 191 Wn. App. 601, 610, 365 P.3d 186 (2015). A trial court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds. *In re Marriage of Kovacs*, 121 Wn.2d 795, 801, 854 P.2d 629 (1993); *In re Dependency of Ca.R.*, 191 Wn. App. at 610.

We conclude that the trial court did not abuse its discretion when it found that Wesley should be placed or remain in the custody, control and care of DSHS. Testimony explained the many services offered to and refused by Kimberly Anderson. Anderson engaged in no services. The trial court could reasonably conclude that Anderson will

20

resist DSHS's provision of services with Wesley in her home. Testimony also established that Kimberly bullied Wesley during visitations.

Finally, Kimberly Anderson challenges the constitutionality of the order of dependency and the placement with DSHS. She cursorily argues that a parent's epilepsy should never deprive a parent of the care and companionship of their child. She cites only to two older California cases, *In re W.O.*, 88 Cal. App. 3d 906, 152 Cal. Rptr. 130 (1979) and *In re Marriage of Carney*, 24 Cal. App. 3d 725, 598 P.2d 36, 157 Cal. Rptr. 383 (1979). Nevertheless, each decision contains facts vastly different from the facts here. We also observe that the trial court did not order the dependency solely on the basis of Anderson's epilepsy.

Kimberly Anderson summarily argues that the trial court's finding that failing to comply with homeschool testing requirements constitutes an unreasonable interference in her right to direct the upbringing of her son in violation of the Fourteenth Amendment to the United States Constitution. Other than stating the general rule that parents possess the liberty to direct the education of their children, Anderson cites only to statutory authority regarding the right of parent to homeschool in Washington. Anderson does not undergo any constitutional analysis or cite to any cases with similar facts to her situation. She does not discuss the requirement of home school testing. Naked castings into the constitutional seas are not sufficient to command judicial consideration and discussion. *State v. Johnson*, 179 Wn.2d 534, 558, 315 P.3d 1090 (2014).

21

No. 34883-1-III
*In re the Dependency of W.A.*

CONCLUSION

We affirm the trial court's order of dependency for Wesley Anderson and the trial court's placement of Wesley with DSHS.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Fearing, J.

Fearing, C.J.

WE CONCUR:

Lawrence-Berrey, J.

Pennell, J.

22