Filed 11/27/24  Bindoy v. McCrary CA1/1
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| LEANNE BINDOY,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>MICHAEL MCCRARY,<br><br>     Defendant and Appellant. | A169165<br><br>(San Mateo County<br>Super. Ct. No. 19FAM02248A) |

Michael McCrary appeals an order requiring him to pay child support, retroactive to the time the San Mateo County Department of Child Support Services (DCSS) filed a complaint seeking support.  McCrary does not dispute his obligation to pay support—only the part of the order making the obligation run from when DCSS filed its complaint, rather than 15 months later, when McCrary was served.  The court made its order retroactive because it found, that during those 15 months, McCrary intentionally evaded service.  (Fam. Code, § 4009.)[1]  That finding, McCrary contends, rests on hearsay documents erroneously admitted over his objection.  We affirm because, whether or not the documents were admissible, McCrary's own testimony contains substantial evidence to support the finding of intentional evasion.

---

[1] Statutory citations are to the Family Code unless otherwise indicated.

1

## BACKGROUND

McCrary and Leanne Bindoy had a son in 2019. McCrary acknowledged his paternity and his duty to support his son. Bindoy filed a "parentage action" against him,[2] and each retained counsel. In January 2022, DCSS prepared a supplemental complaint in the parentage action to require McCrary to pay child support. (§ 17400.) Shortly before DCSS filed the complaint, its employee Erica Orozco called McCrary to discuss child support.

In May 2022, DCSS filed a proof of service of its complaint alleging—inaccurately, the parties now agree—personal service on McCrary on May 21. In June 2022, as DCSS prepared to seek a default judgment, a DCSS employee called McCrary to discuss child support. A week later, DCSS secured a default judgment requiring McCrary to pay support, effective retroactively to February 2022. In August 2022, DCSS filed a proof alleging personal service of the judgment on McCrary.

In November 2022, McCrary learned that DCSS had a lien on his recovery for personal injuries from an accident and had caused his driver's license to be suspended. When he called DCSS to inquire, an employee informed him of the default judgment, and he asked the employee "[t]o tell [him] the proof of service date."

McCrary reported the default judgment to his attorney, who moved to vacate it for lack of service, offering evidence that McCrary was in Texas on the day he was allegedly served. In March 2023, DCSS stipulated to set aside the judgment.

---

[2] The Uniform Parentage Act (§ 7600 et seq.) is "the procedural vehicle by which unmarried parents establish their rights vis-à-vis each other and their children." (*Erika K. v. Brett D.* (2008) 161 Cal.App.4th 1259, 1267.)

DCSS then served the complaint and moved for entry of judgment requiring McCrary to pay support, retroactive to February 2022. McCrary opposed making the obligation retroactive. The court ordered him to pay support and continued the matter for briefing and an evidentiary hearing on whether he had intentionally evaded service, as would enable the court to make the order retroactive (§ 4009).

In lieu of a brief, DCSS counsel Robert Sanchez filed a declaration. Two of its paragraphs noted DCSS employees' phone calls to McCrary in January and June 2022. Each paragraph stated, "Below is an activity log entry made by [DCSS employee]" documenting the call, followed by text seemingly copied and pasted from a log in which the employee summarized the conversation. As an exhibit to his declaration, Sanchez attached a "NON SERVICE REPORT." In the report, a registered process server (Bus. & Prof. Code, § 22350 et seq.) declared he had tried without success, on four dates in March and April 2022, to serve McCrary at his San Francisco home. For each date, the report alleges facts about the attempt. It is not filed-endorsed.

At the start of the evidentiary hearing, Sanchez asked if the court had received his declaration, and McCrary's attorney, Dawn Ward, objected to the attached nonservice report as hearsay. The court deferred ruling on the objection. Ward also noted the report "was not filed with the Court," which Sanchez did not dispute. Sanchez said he would not call any witnesses; Ward said she would call only McCrary.

The attorneys then disputed who bore the burden of proof on the issue of intentional evasion of service. To engage in such conduct, Ward argued, McCrary had to know of "something to be served." The court then asked Ward to address Sanchez's declaration, as it showed "several telephone calls

3

with your client, informing him a case will be opened, a [s]ummons and [c]omplaint will be issued [in] January of 2022," which "seems to establish . . . knowledge that there was something in the offing."

At that point, Ward objected on hearsay grounds to the declaration's recitals of the log entries. Sanchez replied the passages served a nonhearsay purpose: showing McCrary's knowledge of DCSS's complaint. The court overruled the objection. It ruled the log entries fell within hearsay exceptions for state of mind and "explaining subsequent actions." Sanchez added, "It could also be a public record" (Evid. Code, § 1280), which led the court to muse that it could be a business record (*id.*, § 1271). Ward replied that a recital of the entries' text could not be a business record as "contained within a pleading"; the log would have to be "presented independently as an actual business record with the full context." "Yeah," the court replied, "that could be true."

McCrary then testified. He described contacting Bindoy's counsel in 2020 to get a copy of the parentage complaint and having Ward file an answer. He added, "it was just like 'You got a lawyer. I got a lawyer. There really ain't too much for us to be talking about. The lawyers are going to handle it.' " After a relevance objection, Ward said the testimony showed McCrary had not evaded service of Bindoy's complaint and expected communications to occur via counsel.

When asked if he recalled "receiving a call in January [2022] from [DCSS employee] Erica Orozco," McCrary answered, "Not really" but added, "If it's documented, then it happened." He was unaware at that time that DCSS had filed a complaint. Ward noted that, according to Sanchez's declaration, the log entry for a June 2022 call stated: "somebody from DCSS called you and said they had a proof of personal service against you . . . [and]

4

that was the last date to file an answer," and "you told them you had not been served." McCrary replied, "Correct."

Ward further described the recital as stating "that you told them to call your lawyer," but the court corrected her, noting it states that "McCrary said that he has an attorney, Dawn Ward, but did not specify whether or not they are representing [him] for the child support matter nor would he provide contact information." McCrary interjected, "What [the court] just said, that definitely sounds correct because I'm not into doing nobody's job. So it was like, 'She work for the state. You work for the county. You get her number. You call her the same way you called me.'" McCrary testified he told the DCSS employee he had a lawyer because DCSS "shouldn't be calling me, looking for me. The moment you [Ward] are in place, [DCSS should] talk to you."

McCrary testified he later learned of the default judgment and called DCSS in November 2022 to say, "'I need you all to tell me the proof of service date.'" The court asked a "clarifying question": "If every time DCSS calls you[,] you say you are not going to talk to them because you are represented by an attorney, why [did] you [call] them. . . ?" McCrary did not directly answer; he stated he referred the matter to his attorney but did not explain why he first called DCSS directly.

McCrary testified in general that "anytime I get any types of calls that I didn't ask for, . . . that is unexpected, I am not too welcoming of those calls. . . . I just felt as I knew that I hired you [Ward] back in 2020, so essentially nobody from the county or the state should be calling me because I know that you exist. So it's either, A, someone is reluctant to do their job or, B, someone really, really enjoys their job, which is calling me." After that testimony, this exchange ensued: "Q. At any point during 2022 did you become aware that

5

anyone was trying to serve you paperwork from DCSS? A. No. Outside of those calls, no. Q. Did they tell you in the calls they were going to personally serve you? A. No. I wouldn't even let it get that far. Q. What do you mean by that? A. Like in the conversation. It would just be like, 'Oh. We are calling for A.' 'What? Find Ms. Ward.' "

Asked on cross-examination if he declined in January 2022 to confirm his address, McCrary replied, "That sounds right"; it was an example of "not wanting to do [DCSS's] job." As for whether, in June 2022, he declined to confirm that Ward represented him, McCrary testified, "I do not remember if I confirmed it or not. I just knew I said her name. . . . I felt like that was enough." He added, "I told them that, again, I didn't want to do anybody else's job. The same way they found my name, they need to find Mrs. Ward's name. . . ." Finally, asked if he had been "unwilling to provide any information to help facilitate the child support process," McCrary replied, "Not other than the fact that I had Ms. Ward."

On redirect, McCrary testified that, had he known of DCSS's complaint, he would not have evaded service. When asked how he understood DCSS's role before November 2022, he said he thought it was their "normal role": "Taking money out of checks, just being a nuisance, essentially, . . . in my opinion." The court then asked McCrary why he did not refer Orozco to his attorney in the January 2022 call, and he answered, "because I knew that [Bindoy and her attorney] knew that I had an attorney."

When the court ruled on the motion, it first implicitly held DCSS bore the burden of proving intentional evasion. It then overruled the hearsay objections to the nonservice report and to the recitals of log entries.[3] Finally,

---

[3] The third document whose admission McCrary challenges on appeal is a proof of service of the subsequently set-aside June 2022 default

it found McCrary had intentionally evaded service. It relied on the service attempts listed in the nonservice report (including allegations of activity heard or seen in the house), the log entries for the January and June 2022 calls, and McCrary's testimony. "By [his] own testimony today," the court noted, "he did not think he needed to . . . 'do other people's jobs for them,' [or] make the process easy for them. . . ." The court found the claim McCrary "tried to wash his hands of all of this because he has an attorney on the matter . . . isn't true because [in November 2022] he is making contact with DCSS." The court thus ordered McCrary to pay support retroactive to February 2022. He appealed.[4]

## DISCUSSION

A court can make a support order retroactive to the complaint's filing date unless the parent was not served within 90 days and "the court finds that the parent was not intentionally evading service"; in such a case, the order cannot take effect before the date of service. (§ 4009.) Here, McCrary contends the trial court prejudicially erred in the evidentiary hearing on the issue of intentional evasion by admitting hearsay documents not within any

---

judgment. On cross-examination, Sanchez asked McCrary if he was served with the judgment in August 2022, McCrary denied it, and Sanchez requested judicial notice of a proof alleging personal service. Ward objected on hearsay grounds, emphasizing the proof of service of the complaint had proven inaccurate. Ward offered evidence the August 2022 proof was also inaccurate. The court found the evidence inconclusive and considered the proof, implicitly overruling the hearsay objection. Because none of the testimony by McCrary on which we rely concerns the August 2022 proof or the alleged service of the default judgment, we need not address that document further.

 [4] McCrary filed his notice of appeal prematurely—after the court made its oral ruling but before it entered its written order. We treat the appeal as filed after entry of the order. (Cal. Rules of Court, rule 8.104(d), (e).)

7

exception to the hearsay rule, including the nonservice report and the passages in Sanchez's declaration reciting the text of DCSS log entries about the January and June 2022 phone calls. (See fn. 3, *ante*.) The Attorney General, defending the order on appeal (see § 17406), offers three bases to affirm: (1) contrary to the trial court's view, section 4009 imposed on McCrary the burden of proving he did *not* intentionally evade service, which he failed to do; (2) each document came within the express hearsay exception for public records (Evid. Code, § 1280) or an implied exception for a registered process server's return of service (*id.*, § 647); and (3) even if not, McCrary's own testimony, on which the trial court relied, amounts by itself to substantial evidence supporting the finding of evasion, making any evidentiary error harmless. McCrary did not submit a reply brief.

Because we agree with the Attorney General on the third issue, we need not consider the first two—i.e., who bore the burden of proof and whether the disputed documents came within hearsay exceptions.[5] Even if DCSS bore the burden and the documents were not admissible, McCrary's own testimony—particularly his own version of the key phone calls—provides

---

[5] For the trial court's and DCSS's guidance, however, we note the Attorney General cites no authority that a document styled a "non-service report" qualifies as a "return of a process server" to which the presumption created by Evidence Code section 647 applies—let alone such a "report" that has not been filed with the court. (See *Johnson & Johnson v. Superior Court* (1985) 38 Cal.3d 243, 253–254 [defining "return" in ways that entail filing in court].) Moreover, though McCrary does not raise the point, the report's attestation does not satisfy Code of Civil Procedure section 2015.5, which governs unsworn declarations. Finally, while contemporaneous log entries of phone calls made by DCSS employees might come within the public records exception, the Attorney General identifies no exception applicable to the second layer of hearsay created when Sanchez recited the alleged text of the log entries in a declaration created for purposes of litigation, rather than submitting copies of the records authenticated by their custodian.

substantial evidence to support the finding of intentional evasion.[6]  (See, e.g., *People v. Harris* (2005) 37 Cal.4th 310, 336 [erroneous admission of hearsay harmless because similar, admissible evidence supported verdict].)

We review findings of fact in connection with a child support order for substantial evidence.  (*County of Los Angeles Child Support Services Dept. v. Watson* (2019) 42 Cal.App.5th 638, 641.)  That standard requires us to " 'accept as true all evidence and all reasonable inferences from the evidence tending to establish the correctness of the [trier of fact's] findings and decision, resolving every conflict in favor of the judgment.' " (*Regalado v. Callaghan* (2016) 3 Cal.App.5th 582, 596.)  Once we find "reasonable, credible evidence of solid value upon which a reasonable trier of fact could have relied" to make a finding, "the substantial evidence test is satisfied."  (*People v. Barnwell* (2007) 41 Cal.4th 1038, 1052, italics omitted.)

---

[6] Because much of McCrary's testimony focused on the log entries, as recited in Sanchez's declaration, it might seem unfair to rely on his testimony if the trial court should have excluded those recitals.  Had it done so, McCrary might not have testified as he did.  McCrary's counsel, however, informed the court he would testify *before* it overruled her hearsay objections—not in response to its ruling.  Moreover, the purpose of the hearsay rule is to ensure accurate factfinding by excluding statements not made under oath and not subject to cross-examination or observation of demeanor.  (1 Witkin, Cal. Evid. (6th ed. 2024) Hearsay, § 1.)  Here, we rely on testimony in which the party objecting to hearsay evidence of certain phone calls gave his own account of the calls—conversations in which he participated and as to which the ultimate issue was his state of mind.  This largely avoids any prejudice implicating the purpose of the hearsay rule.  Finally, after the response brief proposed that we rely solely on McCrary's own testimony to affirm, McCrary did not file a reply brief.  He thus forfeited any argument such an approach is unfair.  (*In re A.R.* (2014) 228 Cal.App.4th 1146, 1153 ["Mother did not file a reply brief to challenge the [department's] assertion, so we treat the issue as [forfeited]."]; *Campbell v. Ingram* (1918) 37 Cal.App. 728, 732 ["Since appellant has not deigned to reply to the argument of respondent, we have a right to assume that [he] deems the argument . . . unanswerable."].)

McCrary's testimony about his phone calls with DCSS employees constitutes such evidence. He acknowledged that, during Orozco's January 2022 call, he declined to confirm his mailing address—an example of "not wanting to do [DCSS's] job." He also testified he did not refer Orozco to his attorney because Bindoy and her attorney "knew that I had an attorney." But he did not identify any reason he had to think that Bindoy or her attorney had shared this knowledge with DCSS—especially after DCSS called him directly rather than call his attorney.

As for the June 2022 call, McCrary confirmed the caller told him DCSS "had a proof of personal service" and it was his "last date to file an answer." He also confirmed he identified Ward as his lawyer but would not provide her contact information or specify whether she represented him as to child support. He described his view as, " 'You get her number. You call her the same way you called me.' " On cross-examination, he stated similarly he did not recall if he confirmed Ward's representation or not: "I just knew I said her name. . . . I felt like that was enough." When asked if he had been "unwilling to provide any information to help facilitate the child support process," he said, "Not other than the fact that I had Ms. Ward."

McCrary also expressed disdain for DCSS, describing its role as "[t]aking money out of checks, just being a nuisance" and referring derisively to its employees as either being reluctant to do their job or enjoying it too much. While McCrary is entitled to his opinion of DCSS, his scornful disrespect supports an inference he intentionally evaded its efforts to serve him.

When the court asked McCrary why he called DCSS in November 2022 after having declined to talk to them, assertedly because he had counsel, he gave no responsive answer. That unexplained contradiction undermined his

10

claim that the reason for his uncommunicativeness was a belief DCSS should speak only with his attorney, rather than evasion.

Most telling is McCrary's reply when Ward asked if he became aware, in 2022, that anyone was trying to serve him with papers from DCSS: "No. *Outside of those calls*, no." (Italics added.) Presumably noting the negative pregnant in that answer, Ward asked if the callers had told him "they were going to personally serve you," and he replied, "I wouldn't even let it get that far." This suggests he realized the DCSS employees were calling to arrange service of papers regarding the creation of a support obligation, which he sought to avoid by cutting them off.

The above testimony amounts to substantial evidence from which the court could reasonably infer, through his conversations with DCSS employees, McCrary realized DCSS was trying to establish a child support obligation and responded by intentionally evading its efforts to serve him. While that is not the only possible reasonable inference, our standard of review requires us to accept " 'all reasonable inferences from the evidence tending to establish the correctness of the [trier of fact's] findings.' " (*Regalado v. Callaghan, supra*, 3 Cal.App.5th at p. 596.) Accordingly, the trial court did not err in making its support order retroactive. (§ 4009.)

## DISPOSITION

The order is affirmed. DCSS is entitled to its costs on appeal. (Cal. Rules of Court, rule 8.278(a)(2).)

11

_____

Banke, Acting P. J.

We concur:

_____

Langhorne Wilson, J.

_____

Brown, J.

A169165, *Bindoy v. McCrary*